**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEIDRE WAUGH,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-25-1221** |
| **MANSOOR TOOR, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

This matter is before the Court on motions filed by defendants Mansoor Toor ("Toor"), G&M Remodeling and Construction, LLC ("G&M"), and Moxie Pest Control (Maryland), LLC ("Moxie"), to dismiss self-represented plaintiff Deidre Waugh's ("Plaintiff") Amended Complaint. *See* ECF Nos. 40, 43, 54. Also pending is what the Court has construed as a motion by Plaintiff to file a supplement to her Amended Complaint. *See* ECF Nos. 63, 65. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, Plaintiff's motion will be denied, Moxie's motion to dismiss will be granted, and the Court will direct the parties to submit supplemental briefing addressing what effect, if any, developments in Plaintiff's related state-court action against Toor and G&M have on the instant case.[1]

[1] Moxie also filed a motion to partially seal its First Amended Corporate Disclosure Statement, seeking to redact the names of the individual members of the LLCs that, in turn, are the members of Moxie Pest Control (Maryland), LLC. *See* ECF No. 73. Moxie's motion is unopposed and will be granted.

Although the public generally enjoys a right to access court papers, that right is not absolute. Indeed, courts have sealed the identities of non-party investors where those identities do not "directly affect the adjudication of whether subject matter jurisdiction exists." *See Caxton Int'l Ltd. v. Reserve Int'l*

## I. BACKGROUND

### A. Facts

The following facts are drawn from Plaintiff's Amended Complaint. ECF No. 36 ("Am. Compl.").

Plaintiff found a rental listing for a property located at 7520 Maury Road in Windsor Mill, Maryland (the "Property") on Zillow and other real estate websites. Am. Compl. ¶ 15. The listing described the Property as spacious, luxurious, and offering "unparallel[ed] comfort." *Id.* ¶ 16. After Plaintiff called to inquire, a rental agent told Plaintiff she could apply but the owner would make the final decision on any application. *Id.* ¶ 17. The owner of the property is defendant Mansoor Toor. *Id.* ¶¶ 6, 95–96. Toor is an experienced real estate agent in Virginia and the sole member of defendant G&M Remodeling and Construction, a Virginia LLC that Toor established for the purpose of purchasing and renting residential properties. *Id.*; *see also* ECF No. 25 (G&M Corporate Disclosure Statement). Plaintiff applied to rent the Property, and Toor contacted her directly. Am. Compl. ¶ 18.

Plaintiff asked Toor about utilities, rodents, and prior tenants. *Id.* ¶ 19. As relevant here, Toor denied that the Property had any rodent problem and represented that the prior tenants had lived at the Property for fifteen years before moving out only because they had purchased their own home. *Id.* ¶ 20. Toor eventually approved Plaintiff for the lease.

---

*Liquidity Fund, Ltd.*, 2009 WL 2365246, at *7 (S.D.N.Y. July 30, 2009) (internal quotation marks omitted) (citation omitted).

Here, the relevant jurisdictional information is the citizenship of individual members, not necessarily their identities. Moxie's First Amended Corporate Disclosure Statement discloses the citizenship of the relevant individual LLC members, which enabled the Court to determine that diversity jurisdiction exists. Their identities, by contrast, are not material to any issue before the Court. Under these circumstances, Moxie's proposed redactions appropriately balance the public's interest in access to judicial records against the privacy interests of non-parties. Accordingly, Moxie's Motion to Partially Seal (ECF No. 73) will be granted, and the unredacted version of its First Amended Corporate Disclosure Statement (ECF No. 70) shall remain under seal.

On the day Plaintiff received the keys, Toor met with Plaintiff and her mother at the Property. *Id.* ¶ 24. During that visit, Plaintiff's mother discovered a rodent glue trap in the back of the basement. *Id.* ¶ 25. When Plaintiff asked Toor about it, he claimed the trap related to a rodent problem caused by prior tenants being "dirty" and told Plaintiff that the problem had already been resolved. *Id.* ¶¶ 25–28. Toor further advised Plaintiff that he had hired a pest control company—later identified as defendant Moxie Pest Control—to regularly treat the Property. *Id.* ¶¶ 29–30.

Within days of moving in, Plaintiff texted Toor that "mice are everywhere." *Id.* ¶ 31. Toor responded that he would send Moxie to address the problem. *Id.* ¶ 32. Plaintiff alleges that Toor knew that Moxie would not resolve the rodent problem, and that Moxie itself knew that it would not resolve the problem. According to Plaintiff, Moxie had been servicing the Property for a significant period before Plaintiff's tenancy and knew that a rodent infestation existed there. *Id.* ¶¶ 33–36.

Moxie's agents subsequently visited the Property on multiple occasions in response to Plaintiff's continued complaints. Plaintiff "witnessed Moxie agents perform pest control services outside [t]he Property monthly[,]" *id.* ¶ 48, and during each visit Moxie agents placed no more than two mouse traps in the kitchen and basement. *Id.* ¶¶ 41–43. Plaintiff alleges that Moxie's agents knew that these traps would not resolve the infestation yet told Plaintiff that they would. *Id.* ¶¶ 44–47. According to Plaintiff, "[e]xperts will opine" that, during her tenancy, "there were over 12,000 rodents within [t]he Property." *Id.* ¶ 68.[2]

[2] Plaintiff's representation appears to be based on her calculations that up to 1,825 mice from a nearby field and woods could enter the Property annually through gaps as small as a quarter inch, which could lead to 182 female mice remaining inside the Property that could each quickly produce sixty offspring. Plaintiff states that 12,000 is a "conservative" estimate. *See* Am. Compl. ¶¶ 67–68.

Plaintiff, who is legally blind, relied on her mother to identify evidence of rodents throughout the Property, including in the kitchen cabinets, stove, dishwasher, bathroom cabinets, closets, under beds, in the living room, and in the basement. *Id.* ¶ 58. As a result of the infestation, Plaintiff unknowingly ingested rodent urine and droppings and suffered frequent illnesses requiring emergency medical treatment, including ringworm and vomiting. *Id.* ¶¶ 59–60. Likewise, Plaintiff's mother unknowingly ingested rodent urine and droppings during her visits to the Property and experienced illnesses requiring emergency medical treatment. *Id.* ¶¶ 61–63. In December 2024, a family friend, Terry Langford, stayed with Plaintiff over the holidays and suffered bouts of illness while staying at the Property. *Id.* ¶¶ 76–77.

A neighbor told Plaintiff that a considerable number of tenants had previously lived at the Property, that police had raided it at some point, and that prior tenants had moved out because of the continued presence of mice *Id.* ¶ 69. Plaintiff alleges upon information and belief that prior tenants did not reside at the Property for any significant period of time before vacating due to the infestation. *Id.* ¶ 70.

One night, after Plaintiff heard loud scratching sounds in the ceiling, she contacted animal control and was advised to contact her landlord. *Id.* ¶ 78. Toor then arranged for Senate Pest Control Company to inspect the Property. *Id.* ¶ 79.[3] During that inspection, the Senate Pest Control agent informed Plaintiff and Terry Langford that the house was heavily infested, "with over ten thousand rodents living and breeding inside," and identified structural entry points, including gaps between doors and in the foundation, as contributing causes. *Id.* ¶ 80. The agent stated that the evidence of a longstanding rodent problem was "obvious and therefore known." *Id.* The Senate

[3] Plaintiff attached documentation to her Amended Complaint that appears to be an email from Toor to Plaintiff explaining that he fired Moxie for "fail[ing]" to do its job and thus hired Senate Pest Control. *See* ECF 36-1 at 246.

Pest Control agent also told Plaintiff that Toor had instructed him not to provide Plaintiff with a copy of the written report, although he had already given her copies of the accompanying photographs. *Id.* ¶ 82.

Shortly thereafter, a rodent inside the Property bit Plaintiff, requiring medical treatment. *Id.* ¶ 83. Plaintiff "filed a complaint against Toor," who responded by sending her a Notice of Termination of Lease. *Id.* ¶ 84. Plaintiff then ceased further communication with Toor. *Id.* ¶ 85.

Toor received the Senate Pest Control report and photographs but did not contact Plaintiff until her rent payment became past due. Toor "feigned innocence" as to why Plaintiff might be withholding payment. *Id.* ¶ 86. Plaintiff eventually informed Toor that she no longer wished to communicate or meet with him. *Id.* ¶ 89.

Toor subsequently sued Plaintiff in state court for unpaid rent, but that suit was dismissed because Toor lacked a current license. *Id.* ¶ 90. After obtaining a renewed license, Toor refiled the suit. *Id.* ¶ 91. At a later hearing, Toor agreed to waive his claim for unpaid rent if Plaintiff vacated the Property by April 1, 2025. *Id.* ¶ 92. Plaintiff moved out as agreed, before April 1, but Toor refused to return Plaintiff's security deposit, claiming he was withholding it for unpaid April rent. *Id.* ¶ 93. Plaintiff then filed suit in state court seeking return of her security deposit and all sums paid to Toor, totaling approximately $30,000. *Id.* ¶ 94.

**B. Procedural History**

Plaintiff filed the instant action in this Court on April 11, 2025. ECF No. 1. She filed an Amended Complaint on February 10, 2026, asserting negligence claims against Toor, G&M, Moxie, and the Maryland Department of Assessment and Taxation ("MDAT"). *See* ECF No. 36. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court sua sponte dismissed Plaintiff's claim against MDAT for failure to state a claim. *See* ECF No. 69.

On February 23, 2026, Moxie filed a motion to dismiss Plaintiff's Amended Complaint. *See* ECF No. 40. Toor and G&M also filed a motion to dismiss Plaintiff's Amended Complaint, ECF Nos. 43, 54. Plaintiff filed a response in opposition to both motions. *See* ECF No. 48.

On April 16, 2026, Plaintiff filed a supplement to her Amended Complaint, without the Court's leave. *See* ECF No. 63. In due consideration of Plaintiff's self-represented status, the Court treated Plaintiff's supplement as a motion under Federal Rule of Civil Procedure 15(d) to supplement her pleading and gave each defendant an opportunity to respond to Plaintiff's motion. ECF No. 65 at 3. Moxie then filed an opposition to Plaintiff's motion to supplement. ECF No. 67.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure constitutes an assertion that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This rule is to give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim need not include "detailed factual allegations" to satisfy Rule

8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A counterclaim must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*). Although on a motion to dismiss the Court is generally limited to the facts as alleged, the court may consider "documents that are explicitly incorporated into the complaint by reference," and "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) and Fed. R. Civ. P. 10(c)).

When considering a motion to dismiss, a court must take the factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's

liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

"[*P*]*ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). "[L]iberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King*, 825 F.3d at 214).

**B. Rule 15(d)**

Federal Rule of Civil Procedure 15(d) provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The court may permit supplementation even though the original pleading is defective in stating a claim or defense." *Id.* The Fourth Circuit has explained that "[a] supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). However, "the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." *Id.* at 198. "Motions to amend or supplement should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated

failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Hameed v. Maryland State Bd. of Physicians*, Civ. No. BAH-25-1606, 2026 WL 251233, at *6 (D. Md. Jan. 30, 2026) (quoting *Wood v. Yancey*, No. 1:23CV462 (RDA/JFA), 2025 WL 2493327, at *2 (E.D. Va. Aug. 27, 2025) (internal citations omitted)). The decision to permit or deny a supplement is committed to a district court's discretion. *See Tafah v. Lake Vill. Townhomes*, Civ. No. BAH-25-1408, 2026 WL 124306, at *2 (D. Md. Jan. 16, 2026) (citations omitted).

## III. DISCUSSION

### A. Motion for Leave to File Supplement to Amended Complaint

Moxie is the only defendant who opposes Plaintiff's motion to supplement her Amended Complaint. The Amended Complaint asserts a single claim against Moxie—negligence, in Count III. *See* Am. Compl. ¶ 121. Specifically, Plaintiff alleges that Moxie had a duty to provide competent pest control, and Moxie breached this duty "by acting unreasonably, with bad faith, and with the intent to deceive," thereby causing Plaintiff physical, emotional, and financial damage. *Id.* ¶¶ 123–25. Plaintiff argues that her supplement does *not* seek to add new facts but rather "identif[ies] additional legal claims that are supported by the facts already pled in the Amended Complaint." ECF No. 63 at 2; *see also id.* ("This supplement does not amend the Complaint, add new facts, or alter the substance of Plaintiff's claims. It merely identifies additional legal theories that the Court may properly construe from the existing factual allegations."). The additional claims Plaintiff purports to identify are negligent misrepresentation, fraud, violation of the Maryland Consumer Protection Act, breach of implied warranty of workmanlike services, failure to warn, negligent undertaking, and reckless misconduct. *See id.* at 2–4.

Plaintiff's motion to supplement is denied. Rule 15(d) is limited to transactions or events occurring "after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Plaintiff concedes there are no such transactions post-dating the Amended Complaint. Therefore, the motion can be denied on that basis alone. *See, e.g.*, *Tafah*, 2026 WL 124306, at *3 (denying Rule 15(d) motion because the proposed supplement was "rife with allegations concerning occurrences and events that happened before the filing of the amended complaint"); *see also U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015) ("[I]t is implicit in the logic of Rule 15(d) that a motion to supplement may be denied where the referenced events occurred before the filing of the original complaint.").

Even if Rule 15(d) otherwise permitted supplementation, Plaintiff's proposed claims are futile. Leave to amend a pleading may be denied as futile when the proposed amended pleading is clearly insufficient to state a claim or is frivolous on its face. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986); *Van Leer v. Deutsche Bank Securities, Inc.*, 479 F. App'x 475, 479 (4th Cir. 2012). Plaintiff's negligent misrepresentation and fraud claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Guido v. Advanced Infusion, Inc.*, Civ. No. L-10-423, 2010 WL 11691938, at *2 (D. Md. Sept. 15, 2010); *Epps v. Dorsey*, Civ. No. 25-01609-JRR, 2025 WL 2930784, at *6 (D. Md. Oct. 15, 2025). "In alleging fraud or mistake," Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (citation omitted). Even construed liberally, Plaintiff's proposed supplement does not include "the who, what, when,

where, and how" of the alleged misrepresentation or fraud. *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted).

Plaintiff's Maryland Consumer Protection Act ("MCPA") claim is also futile. Even assuming Plaintiff qualifies as a recipient of pest-control services within the meaning of the MCPA, s*ee* Md. Code Ann., Com. Law § 13-303(c)(1), the proposed supplemental pleading does not allege enough facts to suggest that Moxie engaged in a trade practice directed toward Plaintiff or that Plaintiff relied upon any representation by Moxie to her detriment. *See Mohamed v. Bank of Am., N.A.*, 771 F. Supp. 3d 695, 707 (D. Md. 2025). The alleged services were performed pursuant to Moxie's contract with Plaintiff's landlord, and the proposed supplement does not identify any consumer transaction or communication between Plaintiff and Moxie. Relatedly, because there is no allegation that Moxie and Plaintiff had any agreement between each other, it is not clear that Moxie owed her an implied warranty of workmanlike service, which typically arises from a contractual relationship. *See FE Partners, LLC v. Chesapeake Boat Works, LLC*, No. 4:16CV188, 2017 WL 11743721, at *5 (E.D. Va. Aug. 31, 2017) (explaining that the warranty of workmanlike service is an implied promise that typically "arises under operation of contract") (quoting *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 734 (4th Cir. 2000)).

Finally, there is no standalone tort for reckless misconduct in Maryland, *see, e.g.*, *Lee v. Queen Anne's Cnty. Off. of Sheriff*, Civ. No. RDB-13-672, 2014 WL 476233, at *18 (D. Md. Feb. 5, 2014) ("There is no tort for reckless endangerment under Maryland law"), and Plaintiff's proposed negligent failure-to-warn and negligent undertaking claims do not plausibly allege that Moxie owed Plaintiff a cognizable legal duty.[4] Accordingly, the proposed supplemental claims would be futile.

[4] Notably, the Circuit Court of Maryland for Baltimore City dismissed negligent claims brought by Plaintiff against Senate Termite and Pest Control in Case No. C-03-CV-25-003326. *See* ECF No. 67-1 at 2

For all of the foregoing reasons, Plaintiff's motion to supplement is denied.

**B. Moxie's Motion to Dismiss**

In Count III of the Amended Complaint, Plaintiff asserts that Moxie is liable for negligence because it breached its "duty to provide competent pest control services[.]" Am. Compl. ¶ 123. Generally, to state a claim for negligence under Maryland law, a plaintiff must allege (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty. *See Rowhouses, Inc. v. Smith*, 133 A.3d 1054, 1066 (Md. 2016) (citation omitted).

Count III fails because Plaintiff does not allege sufficient facts to support a reasonable inference that Moxie breached any applicable standard of care. Plaintiff alleges that Moxie had a duty to provide "competent pest control services." That allegation, however, does not identify what a reasonably prudent pest-control contractor was required to do under the circumstances or how Moxie's conduct departed from that standard. Likewise, Plaintiff's allegation that "[e]xperts will opine that prevailing community standards are for pest control businesses to refrain from administering ineffective, deceptive, and misleading pest control services," *id.* ¶ 38, is insufficient because it does not explain what additional measures competent pest-control practice required. Instead, the Amended Complaint alleges that Moxie performed monthly services outside the Property and placed traps inside the Property. Although those efforts proved to be ineffective, the mere fact that Moxie's services did not eliminate the infestation does not support a reasonable inference that Moxie acted negligently.

---

(order granting Senate Termite and Pest Control's motion to dismiss because "[Senate Termite] did not enter into a contract with Plaintiff and therefore owed no duty to Plaintiff").

Count III also fails because Plaintiff does not plausibly allege that Moxie's conduct proximately caused her alleged injuries. "It is a basic principle that 'negligence is not actionable unless it is a proximate cause of the harm alleged.'" *Falade v. Beverage Cap. Corp.*, Civ. No. AW-10-02047, 2012 WL 1405720, at *3 (D. Md. Apr. 20, 2012) (quoting *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009)) (cleaned up). Under Maryland law, proximate cause has two separate requirements. "It must be both a 'cause in fact' and 'a legally cognizable cause.'" *Id.* (quoting *Hartford Ins. Co. v. Manor Inn*, 642 A.2d 219, 230 (Md. 1994)). To prove causation-in-fact, a party must show that the event "would not have occurred absent or 'but for' the defendant's negligent act." *Id.* (citations omitted). Alternatively, the "substantial factor" test applies when two or more independent acts result in an injury, meaning that "causation-in-fact may be found if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the plaintiff's injuries." *Brooks v. iSECUREtrac Corp.*, Civ. No. MJG-12-1721, 2014 WL 12489670, at *5 (D. Md. Mar. 26, 2014) (quoting *Pittway Corp. v. Collins*, 973 A.2d 771, 787 (Md. 2009)) (cleaned up).

Although the Amended Complaint asserts that Moxie's negligence "is the proximate cause of Plaintiff's injuries," Am. Compl. ¶ 124, it pleads no facts permitting a reasonable inference that Moxie's alleged acts or omissions were the but-for cause or a substantial factor in producing those injuries. Rather, the Amended Complaint describes a longstanding rodent infestation, structural defects in the Property, and the subsequent involvement of another pest-control contractor (who Plaintiff also sued for negligence). Plaintiff never explains how Moxie's particular conduct—services outside the Property and placement of traps—caused her injuries or how different actions by Moxie would have prevented the injuries she alleges. Nor does she allege facts linking any specific injury to any particular visit or service by Moxie. Instead, Plaintiff simply assumes that

because the infestation persisted after Moxie's services, Moxie must have caused her injuries. Such conclusory allegations are insufficient to plead plausible proximate causation.

For each of the foregoing reasons, Count III must be dismissed.

**C. Toor and G&M's Motion to Dismiss**

In Counts I and II of the Amended Complaint, Plaintiff alleges that Toor and G&M are each liable for negligence because they breached duties to provide a habitable rental property. Am. Compl. ¶¶ 113, 118. In their motion to dismiss, Toor and G&M principally argue that these claims should be dismissed under the doctrine against claim splitting. *See* ECF No. 54 at 6 (incorporating the arguments set forth in ECF No. 26). Specifically, they contend that Plaintiff is simultaneously pursuing two lawsuits—this action and a pending action in the Circuit Court of Maryland for Baltimore County[5]—arising from the same alleged conditions at the Property and involving the same defendants. *See* ECF No. 26-1 at 1. According to Toor and G&M, the principal distinction between the two actions is that Plaintiff, in addition to suing them, sued Moxie in the instant case and sued Senate Termite and Pest Control in the state-court action. *Id.* They argue that maintaining parallel actions constitutes the type of piecemeal litigation the doctrine against claim splitting and the abstention doctrine recognized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976),[6] are intended to prevent. Plaintiff responds that claim splitting is inapplicable because the state-court action has not resulted in a final judgment, the two actions are not identical, and Defendants' arguments are therefore premature. *See* ECF No. 48 at 4.

---

[5] The state court action is pending in the Baltimore County Circuit Court, Case No. C-03-CV-25-003326.

[6] In "exceptional circumstances," *Colorado River* abstention "allows a district court to stay or dismiss pending litigation 'out of deference to . . . parallel litigation brought in state court.'" *Skipper v. Hambleton Meadows Architectural Rev. Comm.*, 996 F. Supp. 478, 486 (D. Md. 1998) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 13 (1983)).

Since the completion of briefing, the Court has learned that the Circuit Court for Baltimore County entered summary judgment in favor of G&M on July 20, 2026. *See* https://perma.cc/8JUJ-WKVV. Because the parties have not addressed the effect, if any, of that ruling on the issues presently before this Court, the Court will direct the parties to submit supplemental briefing addressing its impact on the claims asserted in the instant case.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to supplement (ECF No. 63) is denied, Moxie's motion to dismiss (ECF No. 40) is granted, and the remaining parties shall submit supplemental briefing addressing the effect, if any, of developments in Plaintiff's related state-court action against Toor and G&M on this case. The Court shall issue a separate Order consistent with this Memorandum Opinion.

September 11, 2026
Date

/S/
Matthew J. Maddox
United States District Judge